UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDISON CORPUZ,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>WALMART, INC.<br><br>　　　　　　　　　　Defendant. | Case No.: 3:22-cv-00901-RBM-AHG<br><br>**ORDER DENYING DEFENDANT WALMART INC.'S MOTION TO DISMISS COMPLAINT**<br><br>**[Doc. 7]** |

On September 2, 2022, Defendant Walmart, Inc. ("Defendant") filed a Motion to Dismiss Complaint ("Motion"). (Doc. 7.) Plaintiff Edison Corpuz ("Plaintiff") filed an opposition on September 26, 2022 (Doc. 10), and Defendant filed a reply on October 10, 2022 (Doc. 11). For the reasons discussed below, Defendant's Motion is **DENIED**.

## I.  BACKGROUND

A.  <u>Factual Background</u>

Plaintiff is an individual alleging he purchased Defendant's Spring Valley 1000 mg Fish Oil dietary supplement (the "Product") "on several occasions over the past 3 years, including most recently in or around December 2021." (Doc. 1 at 6.) Plaintiff contends Defendant engaged in "deceptive practices associated with the advertising, labeling and sale of" the Product. (*Id.* at 2.)

     Defendant markets, labels and sells its Product as "Fish Oil" consisting of 600 mg of Eicosapentaenoic Acid ("EPA") and 400 mg of Docosahexaenoic Acid ("DHA"). (*Id.*) EPA and DHA are described as the essential omega-3 fatty acids that naturally occur in fish. (*Id.*) The Product's principal display panel ("PDP") explains the Product contains 1,000 mg of fish oil, consisting of the aforementioned 600 mg EPA and 400 mg DHA. (*Id.* at 3.) The supplemental facts panel ("SFP") on the back of the Product reaffirms that the Product contains 1,000 mg of fish oil while also claiming to provide 1,060 mg of Omega-3 Fatty Acids as Triglycerides including EPA as EE and DHA as EE. (*Id.*)

     Plaintiff argues that "[c]ontrary to what is represented on both the front and back of its label, this Product is not Fish Oil, nor does it contain a single milligram of the principal Omega-3s found in fish oil (i.e., EPA and DHA)." (*Id.*) Rather, "Defendant's Product is a lab synthesized solution – the result of a chemical process known as trans-esterification, whereby an industrial solvent and ethanol are used to molecularly alter and substantially transform otherwise unmarketable fish waste into a consumable product." (*Id.* at 3–4.) Plaintiff alleges that this process "eliminates the majority of fish oil's constituent ingredients and substantially transforms its Omega-3s (i.e., DHA and EPA) into fatty acid ethyl esters – a substance that is materially distinct from the fish oil reasonably expected by consumers." (*Id.* at 4.)

     Plaintiff explains "it is mathematically impossible for 1,000 mg of fish oil to consist of 1,060 mg of Omega-3 Fatty Acids . . . ." (*Id.* at 4.) Additionally, despite claiming that the Omega-3 content is in triglyceride form, Defendant indicates the Omega-3 content to be "as EE" but does not define what the terms "EE" means.[1] (*Id.* at 4–5.)

     Thus, it is Plaintiff's position that "Defendant falsely represented the fundamental

---

[1] The briefing for this Motion confirms that "EE" represents fatty acid ethyl esters. (*See* Doc. 7–1 at 7; Doc. 10 at 3.) It is Plaintiff's position that fatty acid ethyl esters are a substance that is materially distinct from fish oil, which will be discussed in detail below. (*See* Doc. 1 at 4.) The Court will adopt the "EE" abbreviation when referring to fatty acid ethyl esters.

nature of its Product, and as a result of this false and misleading labeling, was able to sell this Product to tens of thousands of unsuspecting consumers throughout California and the United States" and that this conduct constitutes a breach of warranty. (*Id.* at 5.)

B. Procedural Background

On June 21, 2022, Plaintiff filed a class action complaint ("Complaint") against Defendant on behalf of himself and others similarly situated. (Doc. 1.) The Complaint asserts seven causes of action. (*Id.* at 36–44.) The first through third causes of action allege violations of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, et seq., the fourth cause of action alleges violation of California's False Advertising Law ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, et seq., the fifth cause of action alleges violation of California's Consumers Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, et seq., the sixth cause of action alleges violation of breach of express warranty, and the seventh cause of action asserts a claim for restitution based on quasi-contract/unjust enrichment. (*Id.*) On September 2, 2022, Defendant filed the instant Motion requesting the Court dismiss Plaintiff's Complaint with prejudice and without leave to amend. (Doc. 7–1 at 7, 11, 25–26.) Plaintiff filed an opposition on September 26, 2022 (Doc. 10), and Defendant filed a reply on October 10, 2022 (Doc. 11).

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings

in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

When a Rule 12(b)(6) motion is granted, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.   DISCUSSION

A.   <u>Request for Judicial Notice</u>

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. FED. R. CIV. P. 12(d). A court may, however, consider materials subject to judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Under Federal Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a party's request, of facts that are not subject to reasonable dispute because they are (1) "generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). A court may also take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal citations omitted). Finally, under the incorporation by reference doctrine, courts may "take into account

documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations and citations omitted). The incorporation by reference doctrine "treats certain documents as though they are part of the complaint itself," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), so long as "the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

Defendant requests the Court take judicial notice of the following exhibit: a copy of the Global Organization for EPA and DHA Omega-3's Voluntary Monograph, Version 8.1 (Exhibit D)[2]. (*See* Doc. 7–2 at 2–3; Doc. 7–4.) Additionally, Defendant requests the court incorporate by reference the following four exhibits: (1) a copy of Anthony P. Bimbo, *Marine Oils: Edible Oil Processing* (Exhibit A); (2) a copy of Douglas MackKay, *A Comparison of Synthetic Ethyl Ester form Fish Oil vs. Natural Triglyceride Form 2* (Exhibit B); (3) a copy of *Triglycerides vs. Ethyl Ester Forms of Fish Oil Omega-3's*, Science Based Health (Exhibit C); and (4) a copy of the Global Organization for EPA and DHA Omega-3's Voluntary Monograph, Version 7.2 (Exhibit E). (*See id.*)

The Court takes judicial notice of the copy of the Global Organization for EPA and DHA Omega-3's Voluntary Monograph, Version 8.1 in Exhibit D. However, the Court notes it is not bound to take judicial notice of the truth of the matters asserted therein. *See Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 762 (C.D. Cal. 2015) ("Courts may take judicial notice of the fact that an internet article is available to the public, but it may not take judicial notice of the truth of the matters asserted in the article."); *see also Khoja*, 899 F.3d at 999 ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for

---

[2] The Court adopts the exhibit identifiers used by Defendant. (*See* Docs. 7–2, 7–3.)

its truth."); *Bruce v. Chaiken*, No. 215CV00960TLNKJN, 2019 WL 645044, at *1 (E.D. Cal. Feb. 15, 2019) ("While [a court] may take judicial notice of the fact that the internet, Wikipedia, and journal articles are available to the public, it may not take judicial notice of the truth of the matters asserted therein.").

The Court incorporates: (1) the copy of Anthony P. Bimbo, *Marine Oils: Edible Oil Processing* in Exhibit A; (2) the copy of Douglas MackKay, *A Comparison of Synthetic Ethyl Ester form Fish Oil vs. Natural Triglyceride Form 2* in Exhibit B; (3) the copy of *Triglycerides vs. Ethyl Ester Forms of Fish Oil Omega-3's*, Science Based Health in Exhibit C; and (4) the copy of the Global Organization for EPA and DHA Omega-3's Voluntary Monograph, Version 7.2 in Exhibit E. Plaintiff's claims rely on the above refenced exhibits for support, and they may be considered by the Court. *See Khoja*, 899 F.3d at 1002 (incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims"); *United States v. Ritchie*, 342 F.3d at 908 ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where . . . the contents of the document are alleged in a complaint . . . and there are no disputed issues as to the document's relevance."). However, the Court again notes it is not bound by the truth of the matters asserted therein. *See Khoja*, 899 F.3d at 1003 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

B. <u>Preemption</u>

As an initial matter, Defendant contends Plaintiff's Complaint is both expressly and impliedly preempted because "the labelling at issue is regulated under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301-392 (the "FDCA") and the subsequently

enacted Nutritional Labeling and Education Act, § 21 U.S.C. 343-1(a) [("NLEA")]." (Doc. 7–1 at 13.)

### a. Statutory and Regulatory Background

The United States Constitution includes the Supremacy Clause which empowers Congress to enact legislation that preempts state law. *See Gibbons v. Ogden*, 22 U.S. 1, 211 (1824). "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field." *Chae v. SLM Corp.,* 593 F.3d 936, 941 (9th Cir. 2010). In assessing whether Plaintiff's claims are preempted, the court is mindful of the presumption against preemption. *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996); *see also In re Farm Raised Salmon Cases,* 42 Cal.4th 1077, 1088 (2008) (noting that consumer protection laws such as the UCL, FAL, and CLRA, are within the states' historic police powers and therefore subject to the presumption against preemption); *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1188 (S.D. Cal. 2021) ("In the area of proper marketing and labeling of food products, the presumption against preemption is strong.").

By way of background, the FDCA "was enacted in 1938 as a successor to the 1906 Pure Food and Drugs Act, the first comprehensive federal legislation designed to protect consumers from fraud or misrepresentation in the sale of food and drugs." *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 887 (C.D. Cal. 2013). In 1990, Congress amended the FDCA by enacting the NLEA "to 'clarify and to strengthen the Food and Drug Administration's [("FDA")] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'" *Id.* at 887–88 (quoting *Nutritional Health Alliance v. Shalala,* 144 F.3d 220, 223 (2d Cir.1998)). In conjunction with other changes, the NLEA added an express preemption provision to the FDCA. *See* 21 U.S.C. § 343–1(a)(5) ("Except as provided in subsection (b), no State or political subdivision of a State may directly or indirectly establish under

any authority or continue in effect as to any food in interstate commerce . . . (3) any requirement for the labeling of food of the type required by section . . . 343(k) of this title that is not identical to the requirement of such section"").

Among other functions, "[t]he FDCA grants authority to the Secretary of Health and Human Services to 'promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity.'" *Rodriguez v. Target Corp.*, No. 22 CIV. 2982 (LGS), 2022 WL 18027615, at *3 (S.D.N.Y. Dec. 30, 2022) (quoting 21 U.S.C. § 341)). "Under the FDCA, food is 'misbranded' if, among things, 'its labeling is false or misleading in any particular.'" *Rodriguez*, 2022 WL 18027615, at *3 (quoting 21 U.S.C. § 343(a)). Moreover, "[i]f it purports to be or is represented as a food for which a definition and standard of identity has been prescribed by regulations as provide by [§ 341]," such food is misbranded if it fails to "conform[ ] to such definition and standard." 21 U.S.C. § 343(g). "The regulations promulgated under the FDCA require that food packaging bear 'a statement of the identity of the commodity.'" *Rodriguez*, 2022 WL 18027615, at *3 (quoting 21 C.F.R. § 101.3(a)). That "statement of identity" must be the name specified by federal law or, if no such name is specified, "[t]he common or usual name of the food." 21 C.F.R. § § 101.3(b)(1)-(2).

### 1.   *Express Preemption*

Defendant explains that "any claim based on [Defendant's] identification of the Product as a 'Fish Oil' product is barred by the FDCA's applicable express preemption provision" because under the NLEA, "state law cannot be employed to alter or vary the standards of identity for regulated supplements that are 'not identical' to the FDA's standards." (Doc. 7–1 at 13 (citing 21 U.S.C. § 343(a)(1); § 343(g); 21 C.F.R. § 100.1).) It is Defendant's position that "the Complaint fails to plausibly allege that a dietary supplement derived from the oil of fish should be called anything other than 'fish oil.' Indeed, the term 'fish oil' provides consumers vital information about the source of the oil." (Doc. 7–1 at 14.) Defendant contends that "case law and facts" favor calling the Product fish oil in accordance with "practical considerations like the fact that the ingredient

8

is extracted from fish and provides health benefits" because referring to the Product as "fatty acid ethyl ester" would convey "no meaningful information to reasonable consumers." (*Id.* at 14–15.)

Plaintiff argues federal preemption is not applicable and explains Defendant's argument is contradictory. (Doc. 10 at 9.) Defendant tells the Court "there is no FDA regulation that establishes a 'common or usual name' for fish oil" while also asking the Court to conclude that the common or unusual name of the Product is fish oil. (*Id.* (quoting Doc. 7–1 at 16).) Additionally, "Defendant attempts to convince this Court that trans-esterification is nothing more than a mere processing step which has no effect on the underlying nature of the product" which "ignores the Complaint's detailed allegations which clearly differentiates between standard processing." (*Id.* at 13.)

In reviewing the Complaint, the Court finds Plaintiff's assertions regarding the Product's "common or unusual name" are plausible. The Complaint explains that the "trans-esterification process substantially and irrevocably transforms the Omega-3s in fish oil from their natural triglyceride form into Omega-3 [EE]" and that these substances "are distinguishable on a molecular level such that it is impossible as a matter of law or logic for them to share a common or usual name." (Doc. 1 at 16.) Thus, Plaintiff contends that "[a]long with their molecular differences, they have different common or usual names which must be properly represented on labeling of any dietary supplement in which they are contained." (*Id.*) The Court takes note of Defendant's contention that the dictionary definition, among other considerations, qualify the Product as fish oil. (Doc. 7–1 at 14–15.) However, the Court declines to make such a determination at this juncture. *See Rodriguez*, 2022 WL 18027615, at *5 ("[T]he Court cannot weigh the evidence or choose between competing inferences at the motion to dismiss stage.) In accepting all factual allegations in the complaint as true and construing the pleadings in the light most favorable to Plaintiff, the nonmoving party, the Court concludes Plaintiff's claims are not expressly preempted by the FDCA.

/ / /

### 2. *Implied Preemption*

Defendant argues Plaintiff's claims are impliedly preempted because "Plaintiff's UCL claim exists solely by virtue of the FDCA and Plaintiff's enforcement of the same is preempted." (Doc. 7–1 at 17.)

Plaintiff counters that his claims are not impliedly preempted and explains "Defendant's implied preemption argument is predicated on the erroneous contention that absent an underlying violation of the FDCA, Plaintiffs would not have a claim. This is glaringly untrue as each of Plaintiff's state law claims would exist in the absence of the FDCA." (Doc. 10 at 8.) Plaintiff clarifies that Defendant's decision in naming the Product as "fish oil" and affirmative representations relating to the product, such as the contention that "the Product is in Triglyceride form and promise to provide 600mg EPA / 400mg DHA, are each falsehoods that independently give rise to claims under the UCL, CLRA, FAL and express warranty theories." (*Id.* at 8–9.)

Here, it does not appear Plaintiff's UCL claim exists solely by virtue of the FDCA. Plaintiff's state law claims would proceed whether or not the regulations enacted by the FDCA existed. The Court notes that "[d]istrict courts have routinely rejected arguments that state-law UCL, FAL, and CLRA food-labeling claims and related claims under the [Sherman Food, Drug, and Cosmetic Law (the "Sherman Law")] are impliedly preempted under § 337(a) . . . ." *Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 995 (S.D. Cal. 2015) (citing *Vassigh v. Bai Brands, LLC*, Case No. 14-cv-05127-HSG, 2015 WL 4238886, at *4–5 (N.D. Cal. July 13, 2015) (collecting cases)); *see also Hesano v. Iovate Health Scis., Inc.*, No. 13CV1960-WQH-JMA, 2014 WL 197719, at *7 (S.D. Cal. Jan. 15, 2014) ("The FDCA . . . does not preclude states from adopting their own parallel laws and adopting a different mechanism for enforcing those laws. California chose to exercise this right by enacting the Sherman Law and allowing private plaintiffs to enforce that law through the UCL.") (quoting *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *6 (N.D. Cal. Aug. 9, 2013), *on reconsideration,* 113 F. Supp. 3d 1047 (N.D. Cal. 2015)). Accordingly, the Court finds Plaintiff's claims are not impliedly preempted.

C.  Whether the Complaint Should be Dismissed for Failure to State a Claim

   **a.  California Consumer Protection Statutes**

The UCL, CLRA, and FAL, which are the basis of Plaintiff's first through fifth causes of action, are California consumer protection statutes. The UCL prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. California's CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices." CAL. CIV. CODE § 1770. California's FAL prohibits any "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17500. "Because the same standard for fraudulent activity governs all three statutes, courts often analyze the three statutes together." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017); s*ee, e.g.*, *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 985 (S.D. Cal. 2014) ("[c]ourts often analyze these statutes together because they share similar attributes"); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003) (analyzing the UCL, CLRA, and FAL together).

   *1.  "Reasonable Consumer" Standard*

Claims made under the UCL, CLRA, and FAL are governed by the "reasonable consumer" standard. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Under this standard, a plaintiff must "show that 'members of the public are likely to be deceived.'" *Ebner*, 838 F.3d at 965 (quoting *Williams*, 552 F.3d at 938). This standard "requires more than a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Rather, it must be "probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie*, 105 Cal. App. 4th at 508; *see also White v. Kroger Co.*, No. 21-CV-08004-RS, 2022 WL 888657, at *1 (N.D. Cal. Mar. 25, 2022). In general, "[t]he question

of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012) (citing *Williams*, 552 F.3d at 938). In rare situations, however, "a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Cheslow v. Ghirardelli Chocolate Co.*, 445 F. Supp. 3d 8, 16 (N.D. Cal. 2020) (quoting *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014)).

Defendant argues Plaintiff's claims fail because a reasonable consumer is unlikely to be misled by the Product's labeling. (Doc. 7–1 at 18.) It is Defendant's position that reasonable consumers do not define fish oil based on the "chemical bonds or molecular weights" of such products and that the SFP on the back panel of the Product makes it clear that the EPA and DHA contained in the Product are EE. (*Id.* at 19.) Defendant explains that "Plaintiff – and fish oil consumers – are expected to know basic facts about fish oil. This is especially true when presented with the EE information on the actual label." (*Id.* at 20.) Moreover, in response to the Complaint's argument that Product contains 1,000 mg of fish oil while also claiming to provide 1,060 mg of Omega-3 Fatty Acids as Triglycerides, Defendant argues that "[t]he label, as Plaintiff's Complaint acknowledges, makes clear that the product contains 1,000 mg per servings with 600 mg EPA and 400mg DHA . . . In light of these disclosures, no reasonable consumer could ever reach the conclusion that 600[ ]mg plus 400 mg equates to anything other than 1,000" and "no reasonable consumer could or would be misled by what may be a de minimis typo . . . ." (*Id.* at 21.)

Plaintiff counters that whether a reasonable consumer would be misled is generally "question of fact, rarely appropriate on a motion to dismiss." (Doc 10 at 15 (citing *Williams*, 552 F.3d 934).) However, it is Plaintiff's position that a reasonable consumer is likely to be deceived by the Product's labeling because "Defendant's Product is produced by a chemical alteration of fish waste wherein the originating material is broken apart at a molecular level by the introduction of an industrial chemical catalyst (e.g., sodium

1 hydroxide) and re-bonded to a foreign substance (i.e., ethanol) to create a new and distinct
2 compound" known as EE. (Doc. 10 at 15.)  Plaintiff explains that the material distinctions
3 between the substances are "reflected in scientific fact", "confirmed by Plaintiff's
4 analytical testing", and are "universally acknowledged by scientific authorities".  (*Id.*)
5 Plaintiff argues that consumers of dietary supplements are usually reliant on manufacturers
6 to accurately describe the contents therein, and lab synthesized EE is not what a reasonable
7 consumer expects when they purchase fish oil. (*Id.* at 16–17.)  The Product's PDP "clearly
8 states the Product is Fish Oil and contains 600mg EPA and 400mg DHA.  It does not.  As
9 detailed in the Complaint, the Product is an [EE] (not fish oil) which contains no EPA and
10 DHA." (*Id.*)  Moreover, Plaintiff contends "the term 'EE' buried on the back of the Product
11 label does not provide clarity to a reasonable consumer" because "[n]otwithstanding the
12 fact that 'EE' is neither defined or explained on the label . . . [Defendant] cannot explain
13 how such a reference is consistent with the name of the Product or its affirmative promise
14 that the Omega-3 content of the Product is 'as Triglycerides.'  Indeed it is not." (*Id.* at 20.)

15        The Court finds that, accepting all allegations in the Complaint as true, this is not
16 one of the rare situations where "a court may determine, as a matter of law, that the alleged
17 violations of the UCL, FAL, and CLRA are simply not plausible." *See Cheslow*, 445 F.
18 Supp. 3d at 16 (quoting *Ham*, 70 F. Supp. 3d at 1193); *see also Williams*, 552 F.3d at 940
19 ("Appellants have stated a claim and could plausibly prove that a reasonable consumer
20 would be deceived by the Snack[']s packaging.").  Therefore, whether or not a reasonable
21 person would be misled by the Product's label is not fit for determination on a motion to
22 dismiss in this case. *See Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal.
23 2013) ("[t]he question of whether a business practice is deceptive in most cases presents a
24 question of fact not amenable to resolution on a motion to dismiss"); *see also Linear*
25 *Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35
26 (2007) ("[w]hether a practice is deceptive, fraudulent, or unfair is generally a question of
27 fact which requires 'consideration and weighing of evidence from both sides' and which
28 usually cannot be made on demurrer") (quoting *McKell v. Washington Mutual, Inc.,* 142

Cal. App. 4th 1457, 1472 (2006)); *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H DHB, 2012 WL 1512106, at *3 (S.D. Cal. Apr. 16, 2012) ("it is a 'rare situation' where granting a motion to dismiss claims under the UCL is appropriate") (quoting *Williams*, 552 F.3d at 939). Accordingly, the Court cannot conclude, as a matter of law, that a reasonable consumer would not be deceived by labeling the Product as "Fish Oil" consisting of 600 mg of EPA and 400 mg of DHA. *Pelayo*, 989 F. Supp. 2d at 978 (where a court "can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate").

### 2. *Plaintiff's UCL Causes of Action*

As previously noted, Plaintiff's first through third causes of action allege violations of the UCL which prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice." (Doc. 1 at 36–40); CAL. BUS. & PROF. CODE §17200. In addition to its other arguments, Defendant contends Plaintiff's UCL claims fail as a matter of law because: (1) Plaintiff lacks standing, (2) Plaintiff cannot show an "unlawful" practice under the UCL, (3) Plaintiff's allegations of an "unfair" business practice are deficient, and (4) there is no "fraudulent" business practice. (Doc. 7–1 at 21–25.) Each argument will be addressed in turn.

#### i. <u>Standing</u>

Defendant argues Plaintiff lacks standing to assert any claims under the UCL. (Doc. 7–1 at 22.) In order to establish UCL standing, a plaintiff must show economic injury and establish that the "injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011). Defendant explains that "[h]ere, Plaintiff is unable to establish either element" because the label Plaintiff relied upon identifies the DHA and EPA contained in the Product as EE, and Plaintiff received the product he paid for. (Doc. 7–1 at 22.) Thus, there was no economic injury. (*Id.*) Moreover, even assuming Plaintiff had suffered economic injury, Defendant contends the injury "was not caused by an unfair business practice or false advertising" and "because the label clearly identified the product as EE,

14

[Plaintiff's] claims fail and no reasonable consumer would be misled by the Products' labeling." (*Id.*)

The Court finds that, at this stage, Plaintiff does have standing to assert the instant causes of action. The Complaint alleges that "Plaintiff believed that the Product purchased contained real fish oil" but that the Product "is not Fish Oil, nor does it contain a single milligram of the principal Omega-3s found in fish oil . . . ." (Doc. 1 at 3, 32.) Moreover, Defendant markets the Omega-3 content to be in triglyceride form "as EE", however, the Complaint alleges Omega-3 content "cannot be both a triglyceride and [EE]". (*Id.* at 4–5.) Accordingly, "Plaintiff lost money and thereby suffered injury as he would not have purchased this Product and/or paid as much for it absent the misrepresentation." (*Id.* at 32.) These allegations are sufficient to establish standing at this juncture. *See Kwikset Corp.*, 51 Cal. 4th at 330 ("A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging, as plaintiffs have here, that he or she would not have bought the product but for the misrepresentation.").

### ii. Unlawful, Unfair, or Fraudulent Under the UCL

The UCL provides a cause of action for "any unlawful, unfair, or fraudulent business act or practice." CAL. BUS. & PROF. CODE § 17200. Defendant argues Plaintiff's allegations of unlawful, unfair, and fraudulent business practices are deficient. (Doc. 7–1 at 23–35.)

"A 'business act or practice' is 'unlawful' under the unfair competition law if it violates a rule contained in some other state or federal statute." *Sandoz Inc. v. Amgen Inc.*, 582 U.S. 1, 12 (2017) (quoting *Rose v. Bank of America, N. A.*, 57 Cal.4th 390, 396 (2013)). Defendant argues Plaintiff cannot show an "unlawful" business practice because Plaintiff's claims are preempted by the FDCA, and "[n]o state law . . . can be employed to alter or vary the standards of identity for regulated supplements under the FDA." (*Id.* at 23.) The Complaint explains "Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute 'unlawful' business acts

and practices in that they violate" the FDCA, the Sherman Law, the FAL, and the CLRA. (Doc. 1 at 36–38.) As the Court previously explained (*see supra* pp. 6–10), Plaintiff's claims are not preempted by the FDCA and, thus, the Complaint alleges facts sufficient to show an "unlawful" practice under the UCL.

In determining whether a business act or practice is unfair, "courts consider either: (1) whether the challenged conduct is 'tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law,' (*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1366 (2010)); (2) whether the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers,' (*Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009)); or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer'" (*Id.*). *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020). Defendant argues Plaintiff's claims cannot withstand any of these tests. (Doc. 7–1 at 24.) Plaintiff counters by explaining the Product label:

> (a) mischaracterizes a lab-synthesized [EE] as fish oil; (b) claims to have DHA/EPA when it has none; (c) claims to provide its [Omega-3] in the form of triglycerides, when in reality it is an [EE] and (d) claims to provide 400mg DHA and 600mg EPA when it actually contains much less. In so doing, Defendant deceived Plaintiff and class members into purchasing a product they did not want and/or paying a premium price for the Product and damaging them thereby.

(Doc 10 at 22.) In light of the foregoing allegations, and as discussed in detail *supra*, the Court finds the Complaint contains plausibly alleges that Defendant has engaged "deceptive practices associated with the advertising, labeling and sale of [the Product]." (Doc. 1 at 2.) Thus, the Complaint sufficiently states a claim under the "unfair" prong of the UCL.[3]

---

[3] The Court notes its understanding of Defendant's contention that a serving size is two capsules. (Doc. 7–1 at 10, 12.)

Lastly, a business practice is fraudulent under the UCL if members of the public are likely to be deceived. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012). Defendant argues Plaintiff cannot show that a reasonable consumer would be deceived by the Product's labeling. (Doc. 7–1 at 25.) Moreover, it is Defendant's position that Plaintiff cannot satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard, which applies to state claims "grounded in fraud." (*Id.* (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102–06 (9th Cir. 2003)); *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.") (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997)). Plaintiff counters that he has sufficiently alleged Defendant "made a series of misleading labeling claims related to the identity of the product, its ingredients and its amounts [] on the labels of its Product [] during the applicable class periods [] in violation of the provisions of the Sherman Law, UCL[, and] CLRA" and, thus, "Plaintiff has unquestionably satisfied 9(b)." (Doc. 10 at 23–24 (citing Doc. 1 at 2–5, 24–31, 33, 35–44).) The Court finds the allegations in the Complaint sufficient to state a claim under the "fraudulent" prong of the UCL. Moreover, the discussion of whether or not the Product's labeling is likely to deceive the public is discussed at length above. (*See supra* pp. 11–14.)

In light of the foregoing, the Court finds the Complaint sufficiently alleges "enough facts to state a claim to relief that is plausible on its face" in regard to Plaintiff's UCL claims. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. Thus, in considering the reasonable consumer standard, as well as the three prongs of the UCL, the Court **DENIES** Defendant's Motion insofar as it requests dismissal of Plaintiff's first through fifth causes of action.

### b. Breach of Express Warranty

Plaintiff's sixth cause of action alleges breach of express warranty. (Doc. 1 at 43–44.) Defendant argues that Plaintiff's breach of warranty claim fails because a reasonable consumer is not likely to be misled by the Product's labeling. (Doc. 7–1 at 18.)

California Commercial Code § 2313 provides that "(a) [a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) [a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." CAL. COM. CODE § 2313. To plead a claim for breach of express warranty, the plaintiff "must allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty which proximately causes plaintiff injury." *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (Ct. App. 1986).

The Complaint alleges that: (1) Defendant made express warranties that the Product "consisted of real fish oil in its natural triglyceride form; that its principal constituent components were DHA and EPA (as opposed to DHA-EE and EPA-EE); and that the Product contained DHA/EPA in specified amounts"; (2) these express warranties became the basis of the bargain; (3) Plaintiff and proposed class members relied on these warranties and purchased the Product in the belief that they conformed to the express warranties; (4) Defendant breached the express warranties by "failing to supply goods that conformed to the warranties it made"; and (5) Plaintiff and proposed class members paid money for the Product and did not obtain the full value of the Product. (Doc. 1 at 43.) It is Plaintiff's position that if he and the proposed class members "had known of the true nature of the Product, they would not have purchased them or paid less for them." (*Id.* at 44.)

The Court finds these allegations sufficient to state a claim for breach of express warranty. *See Iqbal*, 556 U.S. at 678. Therefore, the Court **DENIES** Defendant's Motion to dismiss Plaintiff's sixth cause of action for breach of express warranty.

    **c.**  **Restitution Based on Quasi-Contract/Unjust Enrichment**

Similarly, Defendant argues Plaintiff's seventh cause of action for restitution based on quasi-contract/unjust enrichment fails because a reasonable consumer is not likely to be misled by the Product's labeling. (Doc. 7–1 at 18.) The Motion lacks any further discussion of this cause of action.

The Complaint contends that the Product includes false and misleading labeling which enticed Plaintiff and proposed class members to purchase the Product. (Doc. 1 at 5, 44.) As such, Defendant has been "unjustly enriched at the expense of Plaintiff and the Class as result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff" and proposed class members. (*Id.* at 45.)

Given that the Court has found it plausible that statements on the Product's packaging could deceive a reasonable consumer (*see supra* p. 14), it declines to dismiss Plaintiff's seventh cause of action for restitution at this stage of the proceedings. *See Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1120 (N.D. Cal. 2022), *reh'g denied* (Sept. 27, 2022) (finding the plaintiff's unjust enrichment claim may proceed because "Plaintiff . . . has adequately stated a claim for their UCL 'unlawful' claim. Further, Defendant does not make any argument about the substance of the unjust enrichment claim itself."); *see also Lopez v. Abbott Lab'ys*, No. 3:22-CV-00421-L-RBB, 2023 WL 2657627, at *4 (S.D. Cal. Mar. 27, 2023) ("Because Plaintiff adequately alleged that Defendant was unjustly enriched through false advertising, she has sufficiently alleged a quasi-contract claim for restitution."). Therefore, Defendant's Motion is **DENIED** as to Plaintiff's seventh cause of action.

## IV. CONCLUSION

Accepting all factual allegations in the Complaint as true and construing the pleadings in the light most favorable to Plaintiff, the Court concludes Defendant's Motion (Doc. 7) is **DENIED**.

**IT IS SO ORDERED**.

DATE: August 10, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE